IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 2:21-CR-00216-CCW |
| ORONDE SHELTON | |

**OPINION**

The Court must resolve a dispute between the parties as to whether Defendant Oronde Shelton is entitled to a jury instruction on the justification defense. For the reasons below, the Court finds that Mr. Shelton has not met his burden to show that he is entitled to such an instruction, and he is, therefore, precluded from raising a justification defense at trial.

**I.    Procedural History**

Mr. Shelton is charged in the Superseding Indictment with one count of possession of a firearm and ammunition by a convicted felon on or about March 17, 2021, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and a second count of possession of a machinegun from in and around March 2021 through in and around April 2021, in violation of 18 U.S.C. § 922(o). ECF No. 94 at 1–4. The firearm listed in both Counts of the Superseding Indictment is a fully automatic Glock model 17, 9mm pistol, which meets the definition of a machinegun. *Id.* at 3–4.

In preparation for trial, the parties submitted joint proposed jury instructions for the Court's consideration. ECF No. 130. As part of these proposed instructions, Mr. Shelton requested permission to advance a justification defense at trial for both charges, which the United States opposed. ECF No. 130 at 14–16. In essence, Mr. Shelton asserts that his possession of the fully automatic Glock 17 on March 17, 2021, and more generally in the January through April 2021

time frame, was justified because of his need to protect himself, most specifically on March 17, 2021 when he was involved in a shooting. *See generally* ECF No. 131.

Mr. Shelton filed a brief in support of his request for a justification instruction, arguing that he has met each element of a justification defense. *Id.* In addition, he asserts that the Supreme Court's recent decision addressing the Second Amendment in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), provides additional support for his requested defense. *See generally* ECF No. 131. The United States filed a brief in opposition and requested an evidentiary hearing pursuant to Federal Rule of Evidence 104. ECF No. 132.

The Court held an evidentiary hearing on February 1 and 2, 2023.[1] Mr. Shelton called Pittsburgh Police Detective William Song and Pittsburgh Police Officer/ATF Task Force Officer Gary Messer to testify. Mr. Shelton also called his sister Abena Shelton to testify, and Mr. Shelton himself elected to testify. The United States called United States Supervisory Probation Officer Tara Kessler. Each witness was cross examined.

## II.    Legal Standard

"[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). In the Third Circuit, a defendant must "meet a high level of proof to establish the defense of justification." *United States v. Paolello*, 951 F.2d 537, 542 (3d Cir. 1991). This "restrictive" approach requires a defendant to establish that:

> (1) he was under [an] unlawful and present threat of death or serious bodily injury;
> (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
> (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

---

[1] The court reporter has provided the Court with a rough transcript of the evidentiary hearing on February 1 and 2, 2023. Citations thereto are abbreviated "Feb. 1 Hr'g Tr." and "Feb. 2 Hr'g Tr." Page numbers of the rough draft may vary from the official transcript, if later ordered by the parties.

(4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* at 540.

The standard for determining at a pretrial evidentiary hearing if a defendant may present a justification defense to the jury is whether the evidence presented or proffered is legally sufficient to support the defense. *United States v. Taylor*, 686 F.3d 182, 194 (3d Cir. 2012). If the evidence is insufficient, the Court may refuse to instruct the jury on the defense and preclude a defendant from raising the defense at trial. *Id.* Ultimately, if a defendant is permitted to raise the justification defense at trial, he must prove each element by a preponderance of the evidence. *See generally United States v. Dodd*, 225 F.3d 340 (3d Cir. 2000).

### III. Relevant Facts

At the evidentiary hearing, Mr. Shelton testified that in 2018, he was released from prison after serving a 120-month federal sentence for conspiracy. Feb. 2 Hr'g Tr. At 33:9–10, 53:12–24. Following his release from prison, Mr. Shelton was on supervised release in the Western District of Pennsylvania, under the supervision of a United States Probation Officer. *Id.* at 46:8–11. At some point after his release, Mr. Shelton heard rumors that some unknown persons were after him because they believed that he had cooperated with law enforcement. *Id.* at 32:22–33:8, 35:24–37:13. Mr. Shelton, who has never cooperated in any federal or state investigation, began to fear for his safety. *Id.* at 26:8–13, 32:15–16. He did not, however, inform law enforcement or his United States Probation Officer that he felt threatened or feared for his safety. *Id.* at 59:4–6.

In late 2020, Mr. Shelton acquired a firearm to protect himself, specifically, the fully automatic Glock 17 at issue. *Id.* at 60:19–61:12. He testified that he sometimes carried this firearm with him, including in areas of the city where he does not feel safe. *Id.* at 42:10–43:2. For example, Mr. Shelton would carry the firearm when going to and from his own home in Homewood, and

when going to his mother's and sister's house at 219 Waldorf Street in or around Pittsburgh's North Side. *Id.* Conversely, he would not typically carry the firearm if he was in areas where he did not feel threatened, such as the North Hills, or on McKnight Road, or if he was going to the gym. *Id.*

On January 24, 2021, Mr. Shelton pulled up in his car at 219 Waldorf Street, and as he was walking toward the house, he heard a shot or two behind him. *Id.* 38:19–23. He quickly asked a neighbor across the street what had happened, and the neighbor pointed to a car, which had turned around at a dead end was returning towards 219 Waldorf Street, and said someone in "the car right there" had been shooting. *Id.* 59:7–19. Mr. Shelton testified that at that point, "I took out my Glock" and began to fire at the shooter's car. *Id.* 59:23–60:2. After firing at the car, Mr. Shelton handed his Glock to his sister and left 219 Waldorf Street in his yellow Corvette. *Id.* 60:12–18. Mr. Shelton believed that he had been the target of the shooting on January 24, 2021 because the shooter fired at a White Jeep Grand Cherokee that was leaving 219 Waldorf Street (driven by Mr. Shelton's sister's friend), and Mr. Shelton has a White Jeep Grand Cherokee that looks very similar. *Id.* 39:24–40:14. Mr. Shelton testified that he had no prior knowledge that any shooting was going to take place that day. *Id.* 60:3–5. Mr. Shelton did not report the incident to law enforcement or his probation officer. Feb. 1 Tr. at 50:3–7, 88:7–22.

Shortly after the shooting, law enforcement arrived on site to investigate the incident, following a ShotSpotter alert that shots had been fired, as well as 911 calls regarding the shots. *Id.* at 16:22–27, 48:20–50:2. None of the 911 calls were placed by Mr. Shelton or from 219 Waldorf Street. *Id.* at 50:3–7. Detective William Song, who was tasked with the investigation, testified that any potential witnesses refused to talk with him, and he was not able to identify the driver of the vehicle. *Id.* at 30:14–25, 50:12–16.

Almost two months after the January shooting incident, on March 17, 2021, Mr. Shelton drove to 219 Waldorf Street to pick up his Glock, after having gone to the gym and done some shopping without his firearm. Feb 2 Hr'g Tr. at 42:5–10. He testified that he had not grabbed his firearm earlier in the day because he would not carry it in an area where he did not feel threatened. *Id.* at 42:12–19, 62:5–21. He further explained that he had no reason to suspect anything would happen that day, apart from a generalized fear for his safety. *Id.* at 64:1–9.

After picking up the Glock, Mr. Shelton put it on the passenger seat of his car, and began to drive down the interstate around 3:00 p.m. *Id.* at 41:16–19, 64:10–13. He traveled south down I-279 and exited at E Street before stopping at a red light. *Id.* at 41:22–42:3. While waiting at the red light, another vehicle approached from his passenger side and an occupant began shooting at Mr. Shelton. *Id.* at 43:23–44:13. Mr. Shelton testified that he ducked down, grabbed his Glock from the passenger seat, and returned fire through his windshield. *Id.* at 44:1–45:3. Mr. Shelton then made a right on East Ohio Street and drove down a dead-end alley. *Id.* at 45:1–5. The other driver followed him and continued to fire, before driving away. *Id.* at 45:4–9. Mr. Shelton realized his car had a flat tire, so he parked it, and walked through the North Side to Federal Street. *Id.* at 45:8–20. Mr. Shelton left his wallet, including his identification, in his car but took the Glock with him. *Id.* at 65:13–22. He called his sister, who picked him up and took him back to 219 Waldorf Street, where he left the gun. *Id.* 45:18–22.

Minutes after the March 17th shooting, Mr. Shelton had a call with his United States Probation Officer. *Id.* at 66:5–11. He did not inform his Probation Officer that he had been the victim of a shooting incident, nor did he contact the police or other law enforcement. *Id.* at 66:5–11, 68:24–69:3. Detective Song was also the investigator for this shooting. Feb. 1 Hr'g Tr. at 24:3–8. Detective Song testified that he examined footage from municipal security cameras and

private businesses to identify Mr. Shelton, but at the time, he was unable to identify the other shooter, even after a thorough investigation. *Id.* 25:25–26:11, 27:8–15.

Over a month later, on April 24, 2021, Mr. Shelton was arrested at 219 Waldorf Street on the current federal charges. *Id.* at 75:26–76:2. At the house, law enforcement found five firearms, including the fully automatic Glock 17 that Mr. Shelton testified he used in the January and March shootings. *Id.* at 63:24–64:2; Feb. 2 Hr'g Tr. at 43:3–7, 59:23–60:2.

**IV.   Analysis**

Having carefully considered the evidence provided and the parties' arguments, the Court concludes that Mr. Shelton has not presented evidence that is legally sufficient to satisfy either the first or third elements of the justification defense. As discussed above, the Third Circuit requires that a defendant meet four elements to establish the justification defense: (1) he experienced an unlawful and present threat of serious harm; (2) he did not recklessly place himself in a dangerous position; (3) he had no legal alternative; and (4) a direct causal relationship existed between the criminal act and the avoidance of harm. *Paolello*, 951 F.2d at 540. Notably, a failure to meet even one element precludes the justification defense. *See, e.g.*, *United States v. Castro-Molina*, 826 Fed. App'x 154, 156–57 (3d Cir. 2020) (finding a defendant who failed to meet the first and third elements was not entitled to the justification defense at trial). Because Mr. Shelton has not presented evidence sufficient to support the first and third elements of a justification defense, the Court need not analyze the second and fourth elements, but will assume without deciding that Mr. Shelton has presented evidence that is legally sufficient to satisfy the second and fourth elements.

Mr. Shelton must first establish that he was under an unlawful threat of death or serious bodily injury and, crucially, that the threat was present. *United States v. Alston*, 526 F.3d 91, 95 (3d Cir. 2008). In the Third Circuit, a "present threat" is generally construed as an "immediate emergency." *Id.* at 95 n.7. A generalized fear does not meet this element; rather, the threat must

be imminent. *Id.* at 96. For felons-in-possession of firearms, the Third Circuit has noted that allowing a justification defense in the absence of an imminent threat "would immunize a convicted felon from prosecution for carrying a firearm solely based on a legitimate fear for life or limb," and allow possession of a firearm for an extended period of time. *Id.* To avoid this concern, courts have held that the justification defense "will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened." *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996); *see, e.g.*, *Paolello*, 951 F.2d at 542 (wrestling a gun pointed at him out of a man's hand); *United States v. Panter*, 688 F.2d 268, 269 (5th Cir. 1982) (reaching for a club after being stabbed and grabbing a gun by mistake). This high standard prevents felons from circumventing felon-in-possession statutes. *Alston*, 526 F.3d at 96 (citing *United States v. Butler*, 485 F.3d, 569 575 (10th Cir. 2007)).

      Here, Mr. Shelton cannot establish that he was under a present threat of harm. He testified that he acquired a fully automatic Glock in late-2020, which he had in his possession whenever he felt unsafe, over the course of approximately four months, including on January 24th, March 17th, and April 24th of 2021. The availability of the justification defense generally turns on whether a felon can possess a firearm in an unexpected emergency situation for mere minutes. *See id.* (collecting cases where minutes satisfied the imminent requirement, but anything beyond did not). The defense is unavailable for sustained possession of a firearm for personal protection over the course of hours, let alone weeks or months, because the threat is not imminent. *See, e.g.*, *id.* at 96–97 (a defendant faced "no immediate danger" when he possessed a firearm, "not just on the night in question, but for over a month"); *United States v. Wofford*, 122 F.3d 787, 790–91 (9th Cir. 1997) (receiving threats from members of the Hell's Angels months prior did not establish a "present threat"). In Mr. Shelton's case, he possessed the firearm for months, throughout the

March 2021 through April 2021 timeframe charged in the Superseding Indictment, in various locations and scenarios, based on a generalized concern that unnamed individuals might threaten him. The fact that the firearm was useful to him during a momentary firefight on March 17, 2021 cannot immunize his months-long unlawful possession of the gun because each moment that Mr. Shelton possessed a firearm placed him in violation of the law. *See Paolello*, 951. F.2d at 541 (citing *United States v. Singleton*, 902 F.2d 471, 472–73 (6th Cir. 1990)). Indeed, he acknowledged that beyond his generalized fear that unnamed individuals might target him, he did not have a reason to believe that anyone would target him on a specific date such as March 17th, yet he decided to arm himself anyway on that date and numerous others. Because a "bald assertion" of generalized threats, spanning months, is insufficient to establish the justification defense as a matter of law, *Wofford*, 122 F.3d at 790, the Court finds that the evidence that Mr. Shelton has provided to establish that he was under an "unlawful and present threat" is legally insufficient.

    Nor can Mr. Shelton present legally sufficient evidence with respect to the third element of his justification defense. To satisfy this element, a defendant must establish there was no legal alternative to both the criminal act, i.e. possession of a firearm, and the avoidance of the threatened harm, i.e. being targeted by unknown assailants. *Paolello*, 951 F.2d at 540. The Third Circuit has further refined this element, and instructed courts to examine whether a defendant possessed a firearm no "longer than absolutely necessary." *Gov't of V.I. v. Lewis*, 620 F.3d 359, 368 (3d Cir. 2010) (quoting *Paolello*, 951 F.2d at 542). Specifically, the Third Circuit held that "to satisfy the third requirement for a justification instruction, a defendant (1) must possess the firearm no longer than is absolutely necessary to avoid the imminent threat; and (2) must dispossess himself of the gun in an objectively reasonable manner once the threat has abated." *Id.* at 369. Reasonable

dispossession is considered a "natural and logical corollary" to the third element, *id.*, because if a defendant argues that he had "no alternative to possession of the firearm," then he must also demonstrate that he took steps to "get rid of the firearm as soon as a safe opportunity arises," *United States v. Still*, 6 F.4th 812, 816 (8th Cir. 2021) (quoting *United States v. Poe*, 442 F.3d 1101, 1104 (8th Cir. 2006)).

      Here, Mr. Shelton has failed to establish that he had no legal alternative to possessing the firearm. Although Mr. Shelton periodically carried this firearm over the course of months, including during the March through April 2021 timeframe of the Superseding Indictment, at the evidentiary hearing he focused on the perceived necessity of having his firearm during the March 17th shooting. However, even viewing that March 17, 2021 possession of the firearm in isolation, his possession on that date cannot satisfy the third element. Assuming that the momentary firefight on the interstate was an imminent threat, Mr. Shelton intentionally possessed the gun for a significant period on March 17th before that threat, as well as for a significant period of time after that threat had abated. *See Lewis*, 620 F.3d at 368 (a failure to reasonably dispossess a firearm after the alleged threat was fatal to a defendant establishing the third element). In the minutes prior to the shooting, Mr. Shelton was simply driving around with the Glock resting on his passenger seat. And after the shooting occurred and the gunman had driven away, he abandoned his vehicle, leaving his wallet behind, but took his firearm with him while he walked through the North Side and then was driven back to 219 Waldorf Street by his sister. This was not an objectively reasonable dispossession of the gun. The firearm was later found, over a month later, at 219 Waldorf Street. Because Mr. Shelton retained possession of the firearm far longer than absolutely necessary and did not dispossess himself of the firearm in an objectively reasonable

manner after the March 17th shooting incident, under Third Circuit caselaw, he cannot establish this third element.

In addition, courts have held that, when a felon fears for his safety, a legal alternative to possession of a firearm is to contact law enforcement. *See United States v. Jackson*, No. 1:12CR69, 2015 WL 2341137, at *9 (W.D. Pa. May 14, 2015) (citing *Wofford*, 122 F.3d at 791). Mr. Shelton argues that contacting law enforcement would have been futile. He notes that, even after a thorough investigation, law enforcement had no suspects for the shootings that occurred in January and March. Notably, however, the investigator for both shootings, Detective Song, testified that he could find no witnesses to assist his investigation. And crucially, Mr. Shelton never contacted law enforcement to inform them that he believed he had been a victim in the shootings. Rather, he fled the scene on both occasions and never followed up with the police, despite the fact that he had eyewitness information about both shootings. He also did not discuss his fear for his safety with his probation officer. Because Mr. Shelton could have, but did not, contact law enforcement to protect himself, he cannot satisfy the third element of his justification defense.[2]

Finally, Mr. Shelton's reliance on the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), is misplaced. He argues that *Bruen* supports the proposition that "[a]t a minimum, § 922(g)(1) is unconstitutional if it is not subject to a meaningful ability to raise a justification defense," emphasizing that the Supreme Court recognized that

---

[2] Even if Mr. Shelton had been able to satisfy the first and third elements of the justification defense, which he has not, the Court has not located any case law indicating that the defense is available at all with respect to the charge in Count 2 of the indictment, specifically, possession of a machinegun in violation of 18 U.S.C. 922(o). This makes sense because unlike 922(g)(1), which prohibits a class of persons, specifically individuals with a prior felony conviction, from possessing a firearm, 922(o) prohibits anyone, even law-abiding individuals, from possessing a machinegun. Consequently, it would be nonsensical for there to be an exception for "justified" possession of a machinegun.

"individual self-defense is the 'central component' of the Second Amendment right." ECF No. 131 at 6 (citing *Bruen*, 142 S. Ct. at 2133). District Courts within the Third Circuit have widely rejected this and similar arguments.[3] As these courts note, the holding in *Bruen* "broadly cited to 'law-abiding' citizens, declining to signal any deficiency in a state's failure to draw a distinction between individuals who may be considered non-law-abiding." *Minter*, 2022 WL 10662252, at *4 n.5. The Court finds this reasoning to be persuasive and concludes that the Supreme Court's decision in *Bruen* does not entitle Mr. Shelton to a justification defense that is otherwise unavailable to him.

### V.     Conclusion

For the foregoing reasons, the Court concludes that Mr. Shelton is not entitled to present a justification defense at trial and will not instruct the jury on that defense.

DATED this 8th day of February, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[3] *See United States v. Young*, No. 2:22-cr-54, ECF No. 47 (W.D. Pa. Nov. 7, 2022) (Schwab, J.); *United States v. Moore*, No. 2:21-cr-121, ECF No. 81 (W.D. Pa. Nov. 9, 2022) (Colville, J.); *United States v. Reese*, No. 2:19-cr-257, ECF No. 193 (W.D. Pa. Nov. 8, 2022) (Ranjan, J.); *United States v. Law*, No. 2:20-cr-341, ECF No. 60 (W.D. Pa. Oct. 27, 2022) (Bissoon, J.); *United States v. Minter*, No. 3:22-CR-135, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022) (Mariani, J.).